1   BRIAN J. STRETCH (CABN 163973)
    United States Attorney
2   SARA WINSLOW (DCBN 457643)
    Chief, Civil Division
3   DAVID A. PEREDA (CABN 237982)
    Assistant United States Attorney
4
        450 Golden Gate Avenue, Box 36055
5       San Francisco, California 94102-3495
        Telephone: (415) 436-7167
6       FAX: (415) 436-6748
        David.Pereda@usdoj.gov
7
    Attorneys for Defendant
8   MEGAN J. BRENNAN, POSTMASTER GENERAL

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                      SAN FRANCISCO DIVISION

12

13  ELMER CAMPBELL,                    )   Case No. 15-cv-03582 JSC
                                       )
14          Plaintiff,                 )   **NOTION OF MOTION AND MOTION FOR**
                                       )   **SUMMARY JUDGMENT; MEMORANDUM OF**
15      v.                             )   **POINTS & AUTHORITIES**
                                       )
16  MEGAN J. BRENNAN, POSTMASTER       )   Date:  May 25, 2017
    GENERAL,                           )   Time: 9:00 a.m.
17                                     )   Location: Courtroom F, 15th Floor
            Defendant.                 )   Judge: Hon. Jacqueline Scott Corley
18                                     )
    _____)
19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2  TABLE OF AUTHORITIES ............................................................................................ ii

3  NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ............................ 1

4  INTRODUCTION ......................................................................................................... 2

5  ISSUES TO BE DECIDED ............................................................................................ 2

6  BACKGROUND ........................................................................................................... 3

7      A.   Campbell Worked As A Mail Handler On Temporary, Light-Duty Status... ....................... 3

8      B.   In 2009, The Mail Volume Where Campbell Worked Fell By 38%. ....................... 4

9      C.   Given The Staggering Decline, The USPS Could No Longer Give Campbell
            Hours ................................................................................................................. 5
10
       D.   Campbell Later Bid For A Job Without Following The Bid Instructions. ................... 5
11
       E.   The USPS Suspended Campbell For Not Updating His Medical Records. ................ 6
12
   PROCEDURAL HISTORY .......................................................................................... 7
13
       A.   The Administrative Paces ............................................................................... 7
14
       B.   Campbell's Suit .............................................................................................. 8
15
   LEGAL STANDARD .................................................................................................. 10
16
   DISCUSSION ............................................................................................................. 11
17
       I.   REHABILITATION ACT ...................................................................................... 11
18
            A.   There Is No Viable Disparate Treatment Claim. ....................................... 11
19
            B.   The Same Is True Of A Reasonable Accommodation Claim ...................... 14
20
       II.  TITLE VII. ....................................................................................................... 15
21
       III. RETALIATION ................................................................................................ 16
22
            A.   Campbell Has Alleged That He Filed A Grievance About Hours
23               Before The USPS Sent Him Home, But The Grievance In Fact Came
                 After ...................................................................................................... 16
24
            B.   Campbell Points To No Causal Evidence, And There Is None In The
25               Record ................................................................................................... 18

26 CONCLUSION ............................................................................................................ 20

27

28  MOTION FOR SUMMARY JUDGMENT
    15-CV-03582 JSC

# TABLE OF AUTHORITIES

## CASES

*Anaya v. Marin Cty. Sheriff,*
   2014 WL 6660415 (N.D. Cal. Nov. 24, 2014) .............................................................. 14

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986)....................................................................................................... 10

*Blanchard v. Lahood,*
   461 Fed. Appx. 542 (9th Cir.2011)............................................................................... 18

*Boyd v. U.S. Postal Service*,
   752 F.2d 410 (9th Cir. 1985) ........................................................................................ 11

*Campbell v. Merit Sys. Prot. Bd.*,
   456 Fed.App'x 902 (Fed. Cir. 2011)................................................................................ 7

*Campbell v. Merit Sys. Prot. Bd,,.*
   596 Fed.App'x 919 (Fed. Cir. 2015)............................................................................ 7, 8

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)................................................................................................. 10, 11

*Chuang v. Univ. of Cal. Davis*,
   225 F.3d 1115 (9th Cir.2000) ........................................................................................ 13

*Clark Cnty. Sch. Dist. v. Breeden*,
   532 U.S. 268 (2001)....................................................................................................... 18

*Coghlan v. Am. Seafoods Co.*,
   413 F.3d 1090 (9th Cir.2005) ........................................................................................ 13

*Coleman v. Quaker Oats Co.*
   232 F.3d 1271 (9th Cir.2000) ........................................................................................ 11

*Coons v. Sec'y of U.S. Dep't of Treasury*,
   383 F.3d 879, 886 (9th Cir. 2004) ................................................................................. 10

*Cornell v. Electra Central Credit Union,*
   439 F.3d 1018 (9th Cir. 2006) ....................................................................................... 15

*Hawn v. Executive Jet Mgmt., Inc.,*
   615 F.3d 1151 (9th Cir. 2010) ....................................................................................... 15

*Jackson v. Simon Prop. Grp.,*
   795 F.Supp.2d 949 (N.D. Cal. June 17, 2011)............................................................... 18

*Karr v. Napolitano,*
   2012 WL 4462919 (N.D. Cal. Sept. 25, 2012) ........................................................ 11, 13

*Kesecker v. Marin Cmty. Coll. Dist.*,
   2012 WL 6738759 (N.D. Cal. Dec. 31, 2012) .................................................. 14

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973) ........................................................................... 11, 15

*Miller v. Fairchild Indus.*,
   885 F.2d. 498 (9th Cir. 1989) ................................................................... 18

*Musick v. Burke*,
   913 F.2d 1390 (9th Cir. 1990) .................................................................. 10

*Nelson v. Colvin*,
   2014 WL 7205043 (N.D. Cal. Dec. 17, 2014); ................................................. 18

*Raytheon Co. v. Hernandez*,
   540 U.S. 44 (1990) ............................................................................... 11

*Richmond v. ONEOK*,
   120 F.3d. 205 (10th Cir. 1997) ................................................................. 18

*Sellie v. Boeing Co.*,
   253 F.App'x 626 (9th Cir. 2007) ............................................................... 16

*Thomas v. City of Beaverton*,
   379 F.3d 802 (9th Cir. 2004) ................................................................... 16

*U.S. Airways, Inc. v. Barnett*,
   535 U.S. 391 (2002) ............................................................................. 14

*Villarimo v. Aloha Island Air, Inc.*,
   282 F.3d 1054 (9th Cir. 2002) .................................................................. 18

*Vollmar v. Int'l Bus. Machines Corp.*,
   2012 WL 3731512 (N.D. Cal. Aug. 8, 2012) ..................................................... 18

*Walton v. U.S. Marshals Service*,
   492 F.3d 998 (9th Cir. 2007) ................................................................... 18

*Wong v. Regents of the Univ. of Cal.*,
   410 F.3d 1052 (9th Cir. 2005) .................................................................. 12

*Yartzoff v. Thomas*,
   809 F.2d 1371 (9th Cir. 1987) .................................................................. 19

*Zukle v. Regents of the Univ. of Cal.*,
   166 F.3d 1041 (9th Cir. 1999) .................................................................. 14

**STATUTES**

29 U.S.C. § 791 ........................................................................................................... 5

29 C.F.R. § 1630.2(o)(1)(ii) ........................................................................................ 5

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

The government is seeking to have your case dismissed through a Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure.  Summary judgment means that instead of going to trial where you and the government can argue your versions of the facts and present witnesses in support of your versions, the Court decides the case after reading the Motion, your Response, and the government's Reply.

**IF THE COURT GRANTS THE MOTION FOR SUMMARY JUDGMENT, YOUR CASE WILL BE OVER AND THERE WILL BE NO TRIAL.**

Rule 56 tells you what you must do in order to oppose the motion.

a.      Generally, a Motion for Summary Judgment must be granted when the Court finds that, through the Motion for Summary Judgment, a defendant has demonstrated there is no real dispute about any fact that would affect the outcome of your case, and the Court is able to decide that the defendant is entitled to judgment as a matter of law.

b.      When a defendant, like the government, supports a Motion for Summary Judgment with proper declarations (or other sworn testimony) or other evidence, a plaintiff—like you—cannot merely rely on what your Complaint says to defend your version of the issues and facts. Instead, you must show that there is a genuine issue of material fact. To do so, you must also set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the government's declarations and documents.

c.      The declarations or other sworn testimony setting out your specific facts must be made on personal knowledge, must set forth such facts as would be admissible as evidence, and must affirmatively show that the affiant is competent to testify regarding the matters in the declaration or other sworn testimony.

If you do not submit your own evidence in opposition to the Motion, the government's evidence might be taken as truth and final Judgment might be entered against you without a trial. **IF THAT OCCURS, YOUR CASE WILL BE OVER AND THERE WILL BE NO TRIAL.**

**YOUR OPPOSITION IS DUE NO LATER THAN MAY 4, 2017.**

1

**INTRODUCTION**

2     For years, Elmer Campbell worked in a temporary, light-duty assignment with the USPS.  His

3   hours were not guaranteed under the collective bargaining agreement ("CBA") between his union and the

4   USPS.  Even so, the USPS found hours for Campbell at the distribution center where he worked.

5     Unfortunately, that changed in 2009, when there was a staggering decline in mail volume at

6   Campbell's jobsite.  As a result, the USPS had to excess nearly 100 workers there.  When it came to

7   carving out work for the staff that stayed, the CBA spelled out that the USPS could not assign light-duty

8   hours at the expense of full-time, regular mail handlers.  So the plant manager had to stop giving light-

9   duty hours to Campbell.

10     Campbell protested through different administrative channels.  His point was that he felt that he

11   was being treated unfairly as a disabled veteran.  Campbell served and sacrificed in Vietnam, losing part

12   of his right leg there.  After some years, the USPS opted to give Campbell back-pay from around the time

13   it sent him home until the day he retired in 2012.  Yet he chose to keep his claims.

14     At this stage, though, Campbell's case has run its course.  To begin with, most of Campbell's

15   claims are insufficiently plead.  The complaint merely mentions the Rehabilitation Act and Title VII, but

16   it pleads no facts setting forth any actual claim under those laws.  After much time now, Campbell has not

17   fixed this.  Nor has he otherwise explained his claims.

18     Even if he had, there is no evidence to carry any discrimination claim.   So too with a retaliation

19   claim.  The record shows only that the plant manager was honoring the CBA.  Nothing hints at disparate

20   treatment owing to a disability or anything else.  And while Campbell has not plead what a reasonable

21   accommodation would be, more light-duty hours would have clashed with the CBA.  Under the law, then,

22   that was not a reasonable accommodation.

23     Finally, there is no sign that the USPS lashed out at Campbell for anything.  Campbell has claimed

24   that he filed a grievance about light duty hours before the USPS stopped giving them to him.  But the

25   record lays bare that things happened the other way around.  Meanwhile, the current version of the

26   complaint singles out no specific, protected activity that supposedly led to retaliation.  And Campbell

27   pointed to none at his deposition.

28   MOTION FOR SUMMARY JUDGMENT
     15-CV-03582 JSC

2

**ISSUES TO BE DECIDED**

   i.   Whether the complaint pleads any discrimination claim?

   ii.   Whether there is evidence to back a discrimination claim under the Rehabilitation Act or Title VII?

   iii.   Whether Campbell has a viable retaliation claim?

**BACKGROUND**

Campbell joined the USPS in 1982. Ex. A, Campbell Depo. at 49:22-50:22. Campbell claims that in 2009, he lost out on hours because of a disability that he has not defined. But the record shows that Campbell's plant manager was only honoring the CBA in the face of a sharp drop in mail volume at Campbell's jobsite.

### A.   Campbell Worked As A Mail Handler On Temporary, Light-Duty Status.

Campbell started out at the USPS as a mail handler at a distribution center, in Richmond, California. *Id.* at 49:22-50:22. After three years on the job, Campbell fell in a breakroom. He hurt his back, shoulder, and right leg. *Id.* at 50:23-51:25. Before joining the USPS, Campbell lost part of his right leg below the knee while serving in the Marine Corps. *Id.* at 46:19-47:2.

By the late 1980s, the Office of Worker's Compensation found that Campbell was no longer injured or restricted due to the fall. *Id.* at 53:4-56:21. Since then, his limitations have been officially tied to his combat injury. *Id.* Campbell, though, still blames the fall in part. *Id.*

Campbell has always been within the mail handler ranks. *Id.* at 76:10-13. To do that job, a person "must be physically able to perform efficiently the duties of the position, which require arduous exertion involving prolonged standing, walking, bending and reaching, and may involve the handling of heavy containers of mail and parcels weighing up to 70 pounds." *Id.* at 76:18-78:7; Ex. D, Job Description (Ex. B to Campbell Depo.).

Campbell has not been physically qualified to work as a regular mail handler since the late 1980s. *Id.* So since then, Campbell has been receiving temporary, light-duty work. Light duty differs from

MOTION FOR SUMMARY JUDGMENT
15-CV-03582 JSC

3

limited duty.  *Id.* at 56:22-57:3.  Light duty, broadly, is for workers who are healing from off-the-job injuries. Ex. B, EEOC Hearing Transcript ("H.T.") (Thompson) at 85:1-87:16.  Limited duty, in contrast, is for workers who are hurt on the job.  *Id.*

As Campbell puts it, light-duty work was "temporary."  *Id.* at 31:16-32:12.  He never applied for a permanent assignment.  *Id.*  In his words:

> My status was basically light duty status . . . So I was basically light duty is temporary. So when it was put in for permanent light duty, I don't know between the two managements before or this management what happened between David Bernard and all the other people working in injury comp and all that stuff. I don't know what they might have run across, but it was in some paperwork that I didn't apply. I didn't apply because they had already applied me because I've been working light duty since '85.

*Id.*

Campbell's last light-duty assignment—in November 2008—spelled out that Campbell could not lift over 25 pounds or stand for very long.  Ex. A, Campbell Depo. at 81:21-84:10; Ex. J, Light Duty Assignment (Ex. D to Campbell Depo.).

The CBA promises no light duty hours.  Ex. E, CBA at Art. 13.3B.  To that end, its provides that: "Light duty assignments may be established from part-time hours, to consist of 8 hours or less in a service day and 40 hours or less in a service week."  *Id.*  Over the years, though, there was enough work for the USPS to keep giving Campbell light-duty tasks.  Ex. A, Campbell Depo. at 56:22-57:3.  That changed when the mail volume bottomed out at the distribution center.  Ex. D, Thompson Decl. ¶¶1-4; Ex. B, H.T. (Thompson) 90:22-93:1, 96:5-98:7, 119:1-121:15.

## B.    In 2009, The Mail Volume Where Campbell Worked Fell By 38%.

In 2009, the USPS was changing over from a Bulk Mail Center network to a National Distribution Center system.  *Id.*  With that shift, the Richmond center, now known as the "San Francisco NDC," saw a 38% nosedive in mail volume, starting in June 2009.  *Id.*  The center had to excess nearly 100 workers.  *Id.*

As for the work that remained, the CBA gave priority to workers with bid positions and workers who had limited-duty status.  *Id.*  The CBA was very clear on that point, stating that "[t]he reassignment

MOTION FOR SUMMARY JUDGMENT
15-CV-03582 JSC

4

1  of a full-time regular or part-time flexible employee to a temporary or permanent light duty or other

2  assignment shall not be made to the detriment of any full-time regular on a scheduled assignment . . ."

3  Ex. E, CBA at Art. 13.4C.

4

5  ### C.   Given The Staggering Decline, The USPS Could No Longer Give Campbell Hours.

6  On October 28, 2009, Campbell was sent home.  Ex. A, Campbell Depo. at 39:3-6.  There was no

7  work for him.  Ex. D, Thompson Decl. ¶¶ 1-4; Ex. B, H.T. (Thompson) 90:22-93:1, 96:5-98:7, 119:1-

8  121:15.  Campbell's supervisors told him that he was being sent home for that reason.  Ex. B, H.T. (Verdin

9  and Wilibanks) at 129:12-19, 136:10-24, 158:24-159:8, 161:13-22.

10  Thompson, who is also African American, explained that he had to assign work in a way that

11  upheld the USPS's end of the CBA.  Ex. D, Thompson Decl. ¶¶ 1-4; Ex. B, H.T. (Thompson) 80:13-22,

12  90:22-93:1, 96:5-98:7, 119:1-121:15.  When the mail volume tanked, there was not enough work to go

13  around.  *Id.*  Thompson could not give light-duty work to Campbell at the expense of full-time regular

14  employees.  *Id.*

15  Campbell was not alone.  Ex. B, H.T. (Thompson) at 124:2-17.  Thompson also sent home another

16  light-duty employee who is not African American.  *Id.*  Campbell could not identify any similarly-situated

17  handler who was treated differently than him.  Ex. A, Campbell Depo. at 124:11-125:17.

18

19  ### D.   Campbell Later Bid For A Job Without Following The Bid Instructions.

20  Months later, Campbell was pre-awarded a bid for a mail handler position.  *Id.* at 103:12-104:6.

21  The bid notice made clear that bidders had to show that they could do the job within six months.  Kukua

22  Decl. ¶ 3; Ex. F, Kukua EEO Affidavit ¶ 17; Ex. G. Bid Posting.  It read:

23  > If you are currently in a light or limited duty status and would like to
24  > preference an assignment on this bid posting, at the time of your bid
   > submission management request that you provide and/or have on file,
25  > medical certification indicating that you will be able to fully perform the
   > duties of the bid position within six months.  Failure to do so will result in
   > disallowance of your bid submission.
26  *Id.*

27  This lines up with the CBA.  Ex. E, CBA (MOU re Light Duty Bidding) at 130.  That process is

28  MOTION FOR SUMMARY JUDGMENT
   15-CV-03582 JSC

5

one of the CBA's terms.  *Id.*

Arlene Kukua, an operations specialist, was managing bids back then.  Ex. B, H.T. (Kukua) at 140:12-17, 140:18-141:7.  There is no sign that she knew anything about Campbell's EEO or complaint history.  To the contrary, she said that she was unaware if Campbell had made any EEO claim.  Ex. F, Kukua EEO Affidavit ¶¶ 6-8.

In processing the bid, Kukua checked whether Campbell was medically cleared to do the job.  Ex. F, Kukua EEO Affidavit ¶ 17; Ex. B, H.T. (Kukua) at 143:6-146:5, 148:13-25, 150:18-22, 152:10-154:18; Ex. H, Emails re Bid.  Kukua learned that Campbell was on light duty and that he had no medical certification that he would be able to perform the job within six months.  *Id.*  Thus, in February 2010, Kukua awarded the bid to the next qualified bidder.  *Id.*

Daniel Gallardo, a shop steward, guessed that a person "might not" have a certification on file yet win a bid.  Ex. B, H.T. (Gallardo) at 77:9-79:5.  When the administrative judge asked why he said that, though, Gallardo acknowledged that everyone he knew had a certification on file or submitted one.  *Id.*

In all events, Campbell has not identified this a basis for any of his claims.  Dkt. No. 50.


### E.    The USPS Suspended Campbell For Not Updating His Medical Records.

Some months after he was sent home, Campbell received a 7-day suspension for not following an instruction—dating back to when he was still working on light duty—to update his medical records.  Ex. B, H.T. (Thompson) at 110:8-111:1, 113:9-18; Ex. C, Thompson Decl. ¶ 6.  As Gallardo explained, "[a]ccording to our union contract, the employee is supposed to provide medical documentation when requested by management."  *Id.* (Gallardo) at 76:14-15.  Under the CBA, Thompson was supposed to review light duty assignments and supporting medical documentation.  Ex. E, CBA at Art. 13.4F.  CBA Here is what it said:

> The installation head shall review each light duty reassignment at least once each year, or at any time the installation head has reason to believe the incumbent is able to perform satisfactorily in other than the light duty assignment the employee occupies.  This review is to determine the need for continuation of the employee in the light duty assignment.  Such employee may be requested to submit to a medical review by a physician designated by the installation head if the installation head believes such examination to be necessary.

MOTION FOR SUMMARY JUDGMENT
15-CV-03582 JSC

6

*Id.*

Thompson explained that the agency gave Campbell many months to fix this.  Ex. B, H.T. (Thompson) at 113:9-18.  Campbell claims that he turned in records, which the agency rejected.  Ex. A, Campbell Depo. at 90:20-98:2.  He refused to cure his submission, he says, until the agency better explained what it wanted.  *Id.*  In his view, that never happened.  *Id.*

At any rate, Campbell does not even believe that he was ever suspended.  *Id.* at 121:12-20.  As with the bid, the complaint never mentions the suspension.  Dkt. No. 50.  And in explaining his claim, nor does Campbell.  Ex. A, Campbell Depo. at 133:6-134:13.

## PROCEDURAL HISTORY

Campbell brought this suit after going down a few administrative paths.  Several pleading rounds later, the Fifth Amended Complaint now stands.  To spare everyone's time and resources, the USPS stood down on another motion to dismiss.  Meanwhile, the Court and the U.S. Attorney's Office have both pressed Campbell to seek help at the Pro Se Help Desk.  Here is a recap of all this.

### A.    The Administrative Paces.

Grievance

On November 23, 2009, Campbell's union lodged a grievance on his behalf.  It took aim at the USPS's decision to send Campbell home on October 28, 2009.  Dkt. No. 24-2, Davis Decl. and Exs.  After some years, the USPS chose to put things to rest by paying Campbell a lump sum of wages as if he had worked full time from November 2009 through March 2012, when Campbell retired.  *Id.*

MSPB

On January 12, 2010, Campbell filed an appeal to the Merit Systems Protection Board, alleging that that the USPS discriminated against him and wrongly denied him work.  *Campbell v. Merit Sys. Prot. Bd,.* 456 Fed.App'x 902, 904 (Fed. Cir. 2011).  The appeal made it up to the Federal Circuit, back down, and then back up again.  *Campbell v. Merit Sys. Prot. Bd,.* 596 Fed.App'x 919 (Fed. Cir. 2015).

MOTION FOR SUMMARY JUDGMENT
15-CV-03582 JSC

7

Finding that the settlement with the USPS "resolve[d] the controversy in question," the Federal Circuit dismissed the appeal. *Id.* at 920. The court highlighted that the MSPB had twice ruled that the USPS's actions were faithful to the CBA. *Id.* at 919.

EEO

On February 27, 2010, Campbell filed an EEO complaint alleging that the USPS "refused to allow [him] to continue working in [his] light duty position and this interrupted [his] salary and forced [him] to use sick/annual leave. Constructive suspension." Dkt. No. 24-1, Zui Decl. and Ex.

The last EEO claim before that one was in 2005 for alleged harassment. The complaint was closed in March 2006. *Id.*

**B.    Campbell's Suit.**

Original Complaint

In August 2015, Campbell filed his first complaint. Dkt. No. 1. It seemed to allege that the USPS failed to accommodate a disability. *Id.* When the USPS moved to dismiss the complaint, Campbell agreed that it failed to state a claim. *Id.* So the Court granted the motion with leave to amend. Dkt. No. 17.

First Amended Complaint

Two months later, Campbell filed a First Amended Complaint that tried to assert claims under the Rehabilitation Act and Title VII. Dkt. No. 18. The USPS brought another motion to dismiss, which the Court granted with leave to amend. Dkt. No. 29.

Second Amended Complaint

Then came the Second Amended Complaint. Dkt. No. 30. That version tried to assert claims under the Back Pay Act, the ADA, Title VII, and the Rehabilitation Act. *Id.* The USPS put its pen back to paper. Here is how the Court summed up its ruling on that motion:

> ▪ Plaintiff's Back Pay Act claim and any claim under the ADA are dismissed without leave to amend.

MOTION FOR SUMMARY JUDGMENT
15-CV-03582 JSC

8

1

2
- Plaintiff is granted leave to amend to reallege his Title VII race discrimination claim.

3

4
- Plaintiff's Rehabilitation Act disability discrimination claim is dismissed with leave to amend to specifically identify the disability or disabilities he alleges Defendant failed to accommodate as well as the accommodation sought.

5

6
- Defendant's motion to dismiss Plaintiff's constructive termination-based claims as unexhausted is denied, and as is the motion to dismiss Plaintiff's retaliation claim.

7

8
Dkt. No. 38, Order at 15-16 (March 15, 2016).

9      Looking at the retaliation claim, the Court held that: "Plaintiff alleges that he filed a union

10 grievance in October 2009 and that the following month USPS began denying him light-duty work. (SAC

11 ¶¶ 8-9.) Plaintiff further alleges that after he exhausted his union and Merit Board administrative remedies

12 in 2010, USPS placed him on a leave without pay status. (Id. ¶ 12.) Plaintiff's allegation that USPS began

13 denying him work one month after he filed a grievance is sufficient to support an inference of causation."

14 *Id.* at 14.

15      The Court closed by saying that it "again strongly encourages Plaintiff to seek free assistance from

16 the Northern District's Pro Se Help Desk." *Id.* at 16.  It also told Campbell how to do so.  *Id.*

17

18      Third and Fourth Amended Complaints

19      Campbell filed a Third Amended Complaint, which the USPS answered.  Dkt. Nos. 40-41.

20 Campbell then sought leave to file a fourth.  Dkt. No. 46.  Before the Court ruled, the parties agreed, at

21 Campbell's request, that he could file a Fifth Amended Complaint.  *Id.* at 48.

22

23      Fifth Amended Complaint

24      The Fifth Amended Complaint ("FAC") now stands.  Dkt. No. 50.  The FAC largely quotes from

25 the Court's Order about the Second Amended Complaint, but it takes no steps to address the shortfalls

26 that the Court outlined.  *Id.*    Altogether, the FAC lists three causes of action: (1) "Employment

27 Discrimination based on disability," (2) "Retaliation in Violation of the Rehabilitation Act of 1973," and

28 MOTION FOR SUMMARY JUDGMENT
15-CV-03582 JSC

1    (3) "Retaliation in violation of Title VII of the Civil Rights Act of 1964." *Id.* at 5-7.

2       As for the Rehabilitation Act claim, the FAC still does not say what Campbell's disability is or

3    how the USPS failed to accommodate him.  Dkt. No. 50.

4       As for the retaliation claim, the FAC simply quotes the Court's discussion on that claim and cites

5    to the Second Amended Complaint.  *Id.* at 3-4.

6       As for a Title VII race claim, the FAC makes no effort to plead one.

7

8    <u>Campbell's Depositions</u>

9       For a long time, the USPS was unable to reach Campbell to schedule his deposition.  Dkt. No. 55

10   at 5.  The USPS then sought two extensions to depose Campbell that were meant to give him time to find

11   a lawyer.  *Id.*  To the same end, the assigned AUSA stopped Campbell's first deposition before getting

12   into the meat of the case.  *Id.*  The AUSA urged Campbell to seek help from the Pro Se Help Desk.  The

13   AUSA even walked him over to that office.

14

15                                        **LEGAL STANDARD**

16      Summary judgment serves to expose and shed unbacked claims.  *Celotex Corp. v. Catrett*, 477

17   U.S. 317, 323-24 (1986).  "[I]f the movant shows that there is no genuine dispute as to any material fact

18   and the movant is entitled to judgment as a matter of law," then summary judgment is proper.  Fed. R.

19   Civ. P. 56(a).  A dispute is "genuine" only if there is enough evidence for a reasonable fact finder to come

20   down for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  A dispute

21   is "material" if the fact may affect the outcome of the case.  *Id.* at 248.

22      Thus, summary judgment must be granted when a party fails to show that she will offer evidence

23   on an essential element of her claim.  *Celotex*, 477 U.S. at 322.  "When judging the evidence at the

24   summary judgment stage, the district court is not to make credibility determinations or weigh conflicting

25   evidence, and is required to draw all inferences in a light most favorable to the nonmoving party." *Musick*

26   *v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).  The moving party need not produce any evidence on

27   claims that the non-moving party must prove at trial; rather, the moving party may simply point out that

28

1    evidence is missing.  *Celotex*, 477 U.S. at 322-23.  If that happens, the non-moving party must present

2    specific evidence to show that there is a genuine issue for trial.  *Id.*

3         A party cannot wait until this stage to raise new claims that are aimed at skirting summary

4    judgment.  *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1291-1292 (9th Cir.2000).

5

6                                        **DISCUSSION**

7         It is not lost on the government that Campbell is a veteran who worked temporary, light-duty hours

8    for many years.  In the end, the USPS chose to pay Campbell the hours that it had to stop giving him under

9    the CBA.  That said, Campbell has not said how or why the USPS allegedly discriminated or retaliated

10   against him.  And the record shows that the CBA—not animus or get-back—drove any job decision that

11   Campbell might have in mind.

12

13   **I.       REHABILITATION ACT.**

14        Federal employees may bring claims for disability discrimination through Section 501 of the

15   Rehabilitation Act, 29 U.S.C. § 791.  *Boyd v. U.S. Postal Service*, 752 F.2d 410, 413-414 (9th Cir. 1985).

16   The FAC cites that law but offers no facts animating a claim.  And one cannot be wrung from the record.

17

18        **A.       There Is No Viable Disparate Treatment Claim.**

19        There are three steps for vetting a claim that an employer treated a worker differently—and thus

20   discriminated against her—because of the worker's disability.  *Karr v. Napolitano*, 2012 WL 4462919 at

21   *6 (N.D. Cal. Sept. 25, 2012)(citing *Raytheon Co. v. Hernandez*, 540 U.S. 44, 53-54 (1990)).  This process

22   is the same one that the Supreme Court rolled out for Title VII cases.  *Id.* (citing *McDonnell Douglas*

23   *Corp. v. Green*, 411 U.S. 792, 802-804 (1973)).

24        First, a plaintiff must set forth a claim that on its face shows discrimination.  *Id.*  Second, if that

25   happens, it is up to the employer to show that a "legitimate, nondiscriminatory reason" drove the job

26   decision that is at issue.  *Id.*  Third, if the employer does so, the plaintiff must show that the reason is a

27   "pretext" for discrimination.  *Id.*

28   MOTION FOR SUMMARY JUDGMENT
     15-CV-03582 JSC

                                             11

<u>Campbell has not set forth a prima-facie claim.</u>

Starting at step one, Campbell has not set forth a prima-facie claim.  To do so, Campbell must show that he: (1) is a person with a disability, (2) is otherwise qualified for the job, and (3) was discriminated against *because* of his disability.  *Walton v. U.S. Marshals Service*, 492 F.3d 998, 1005 (9th Cir. 2007)(citing *Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1058 (9th Cir. 2005).

To begin with, the FAC nowhere says what disability Campbell means to put at issue.  Nor does it explain what position Campbell wanted or how he was qualified to fill it.  Hence, the claim should be dismissed.

That said, nothing suggests that the USPS was discriminating against Campbell because of any disability.  *Walton,* 492 F.3d at 1005.  While the FAC is mostly silent as to the core elements of claim, it broadly says how Campbell feels that the USPS mistreated him: by "refusing and failing to transfer or reassign [him] to a job within his medical restrictions, and other acts of discrimination."  FAC at 6.

There is no evidence that the USPS treated Campbell differently because of a disability.  Thompson explained that a few months before he sent Campbell home, the mail volume dropped by 38%.  Ex. D, Thompson Decl. ¶¶ 1-4;  Ex. B, H.T. (Thompson) 90:22-93:1, 96:5-98:7, 119:1-121:15.  The USPS had to excess nearly 100 employees at Campbell's job site.  *Id.*  Under the CBA, light duty handlers, like Campbell, were guaranteed no hours.  Ex. B, CBA at Art. 13.3B.  And the USPS could not assign light-duty work to the detriment of full-time, regular handlers.  *Id.* at Art. 13.4C.  Campbell himself calls his status "temporary."  Ex. A, Campbell Depo. at 31:16-32:12.

Against that backdrop, nothing suggests that the USPS treated Campbell differently than any similarly-situated handler.  Campbell has pointed to no one along those lines.  Ex. A, Campbell Depo. at 124:11-125:17.  Thompson, on the other hand, held up an example of another light-duty worker whom he also sent home.  Ex. B, H.T. (Thompson) at 124:2-17.

So too with the bid.  Even if Campbell had put it at issue, there is no evidence that the USPS stuck to the bid instructions for some bidders but not others.  The CBA, moreover, provides for those instructions.  Ex. E, CBA (MOU re Light Duty Bidding) at 130.   Kukua testified that she treated all bidders the same.  Ex. B. H.T. (Kukua) at 146:6-20.  And Gallardo, the shop steward, could think of no

1    one who failed to submit a certification yet won a bid.  *Id.*  (Gallardo) at 77:9-79:5.

2         Finally, as for the suspension, Campbell has not put it at issue either.  His take is that it never

3    happened.  Ex. A, Campbell Depo. at 121:12-20.  Still, there is no sign that the USPS suspended him

4    because he was disabled or that it treated a similarly-situated worker any differently.  Thompson, again,

5    was only following the CBA.  Ex. E, CBA at Art. 13.4F; Ex. B, H.T. (Thompson) at 110:8-111:1, 113:9-

6    18.113:9-18; Ex. C, Thompson Decl. ¶ 6.  Article 13.4F of that pact called for Thompson to review light-

7    duty assignments each year and to ask for medical records in doing so.  Ex. E, CBA at Art. 13.4F

8         In short, the record is missing any proof of disparate treatment.  Campbell's claim, then, ends there.

9

10        <u>There is no evidence of pretext.</u>

11        Even if Campbell had set forth a prima-facie claim, the USPS had valid reasons for each job

12   decision in the record.  Each one stands up to scrutiny.  Nothing in the record evinces any pretext.

13        A plaintiff can prove pretext "(1) indirectly, by showing that the employer's proffered explanation

14   is unworthy of credence because it is internally inconsistent or otherwise not believable, or (2) directly,

15   by showing that unlawful discrimination more likely motivated the employer." *Chuang v. Univ. of Cal.*

16   *Davis*, 225 F.3d 1115, 1127 (9th Cir.2000)."

17        Direct evidence "is evidence which, if believed, proves the fact of discriminatory animus without

18   inference or presumption, and it typically consists of clearly sexist, racist, or similarly discriminatory

19   statements or actions by the employer." *Karr*, 2012 WL 4462919 at *14 (quoting *Coghlan v. Am. Seafoods*

20   *Co*., 413 F.3d 1090, 1094–95 (9th Cir.2005).  "Indirect, circumstantial evidence must be specific and

21   substantial to defeat summary judgment.  And a plaintiff cannot create a genuine issue of pretext to survive

22   a motion for summary judgment by relying solely on unsupported speculations and allegations of

23   discriminatory intent." *Id.* (quotations and citations omitted).

24        Here, there is nothing of either sort.  No one spoke any "clearly discriminatory" words.  Nor does

25   anything—much less anything "specific and substantial"—suggest that discrimination swayed the USPS's

26   thinking.

27

28   MOTION FOR SUMMARY JUDGMENT
     15-CV-03582 JSC

**B.     The Same Is True Of A Reasonable Accommodation Claim.**

Likewise, there is no cognizable accommodation claim.  Such a claim needs proof that: (1) a plaintiff is disabled; (2) she is qualified to perform the essential functions of the job; and (3) a reasonable accommodation is possible.  *Zukle v. Regents of the Univ. of Cal.*, 166 F.3d 1041, 1045 (9th Cir. 1999).

All that is missing here.  For one thing, the FAC pleads no facts about those elements.  The Court pointed this out earlier in the case, holding than an earlier version of the complaint had not described "the disability upon which [Campbell's] failure to accommodate is based" or what "a reasonable accommodation would be." Dkt. No. 38, Order at 12 (March 15, 2016).  But the Court noted that Campbell mentioned at a hearing that he meant his service injury, which he claims his workplace fall made worse. *Id.*  He also said that a reasonable accommodation would be more of the same light duty work he had in the past. *Id.*

None of this, though, appears in the FAC.  Meanwhile, the Court made clear that "[w]hile a plaintiff need not plead every single element of a reasonable accommodation claim, his claim that USPS denied him a reasonable accommodation simply cannot proceed absent facts that plausibly support these elements." *Id.* (citing *Anaya v. Marin Cty. Sheriff*, 2014 WL 6660415, at *11 (N.D. Cal. Nov. 24, 2014). Because those facts are still missing, there is no prima-facie claim.

For another thing, there is no evidence that a reasonable accommodation was possible.  Such measures are "modifications or adjustments to the work environment, or to the manner of circumstance under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii).  It is Campbell's burden to show that an "accommodation seems reasonable on its face, i.e., ordinarily or in the run of cases." *Kesecker v. Marin Cmty. Coll. Dist.*, 2012 WL 6738759 (N.D. Cal. Dec. 31, 2012)(quoting *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401-402 (2002)).

Light-duty work in general could not fit that bill.  A reasonable adjustment is not one that violates another worker's rights under a CBA. *Kesecker*, 2012 WL 6738759, at *5.  To that end, the Supreme Court has held that an accommodation must not upset an employer's seniority system, especially one under a CBA. *U.S. Airways, Inc.*, 535 U.S. at 403-404.

MOTION FOR SUMMARY JUDGMENT
15-CV-03582 JSC

A light-duty accommodation here clashes with those principals and precedent.  The USPS would have breached the CBA by giving Campbell those hours.  Ex. E, CBA at Art. 13.4C.  That agreement made clear that "[t]he reassignment of a full-time regular or part-time flexible employee to a temporary or permanent light duty or other assignment shall not be made to the detriment of any full-time regular on a scheduled assignment."  *Id.*  Thompson explained that if he gave Campbell light-duty hours, he would have done so at expense of regular, full-time regular handlers.  Ex. D, Thompson Decl. ¶¶ 1-4; Ex. B, H.T. (Thompson) 90:22-93:1, 96:5-98:7, 119:1-121:15.

In sum, Campbell has not set forth a claim.  And light duty hours, at bottom, were not an option.

## II.    TITLE VII.

For all the same reasons, there is no viable Title VII claim.  Under that law, an employer may not discriminate against an employee because of her "race, color, religion, sex, or national origin."  A person endures disparate treatment at work when he or she "is singled out and treated less favorably than others similarly situated on account of [protected class.]"  *Cornell v. Electra Central Credit Union,* 439 F.3d 1018, 1029 (9th Cir. 2006)(internal quotation marks omitted).

First, the FAC pleads no Title VII claim.  It goes no farther than citing the statute.  As a result, Campbell's claim fails.

Then there is the matter of proof.  To make out a prima facie claim, Campbell must show that: "(1) he is a member of a protected class, (2) he was qualified for his position and was performing his job satisfactory, (3) he experienced an adverse employment action, (4) similarly situated individuals outside his protected class were "treated more favorable, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination."  *Hawn v. Executive Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010); *McDonnell Douglas Corp.*, 411 U.S. at 802.

The burden shifts as explained in Part IA.  *McDonnell Douglas Corp.*, 411 U.S. at 802.  The analysis is also the same.  The bottom line is that there is no evidence that Thompson treated anyone differently.  Moreover, there are valid reasons for all the job decisions in the record but no evidence that those reasons were a pretext for discrimination.  Campbell said in his deposition that in the 1990s, he came

MOTION FOR SUMMARY JUDGMENT
15-CV-03582 JSC

1   chest-to-chest with a coworker who used a racial slur.  Ex. A, Campbell at 125:18-133:5.  This stray,

2   remote remark cannot anchor a claim.  *Sellie v. Boeing Co.,* 253 F.App'x 626, 627 n.3 (9th Cir. 2007).

3       In brief, the FAC asserts no Title VII claim and the record in no way supports one.

4

5   **III.    RETALIATION.**

6       Campbell's retaliation claim is mostly undefined.   Campbell has alleged that he grieved his hours

7   before the USPS sent him home.  The record lays bare, though, that the grievance came after.  Besides

8   that allegation, the FAC says nothing specific; Campbell has never lifted up any specific thing that he

9   feels led to retaliation; and he has pointed to no evidence.

10      In contrast, here is what Campbell must actually show: "(1) involvement in a protected activity,

11  (2) an adverse employment action, and (3) a causal link between the two."  *Coons v. Sec'y of U.S. Dep't*

12  *of Treasury*, 383 F.3d 879, 886 (9th Cir. 2004)(quotations and citations omitted).[1]  Campbell cannot meet

13  his burden.  He has floated no theory, much less evidence.  And while the government is not bound to

14  guess what Campbell could have in mind, it has tried yet found nothing that anchors a claim.

15

16      **A.    Campbell Has Alleged That He Filed A Grievance About Hours Before The USPS**
       **Sent Him Home, But The Grievance In Fact Came After.**

17

18      The FAC claims that the USPS lashed out at Campbell for "complaints that [Campbell] was being

19  subjected to a hostile work environment and discrimination based on disability, and also his requests for

20  reasonable accommodation."  FAC at 6.  For those things, the FAC claims, the USPS "constructively

21  terminated [Campbell's] employment, and refused to transfer or reassign [him] to a job within his medical

22  restrictions, and subjected him to other adverse acts in retaliation for his protected activity."  *Id.*

23      Campbell has not said what "complaints" or "requests" he means.  At his deposition, Campbell

24  had a chance to shed some light.  Instead, here is what he said:

25

26      [1] The FAC's Third Cause of Action is labeled, *Retaliation in Violation of Title VII of the Civil*

27  *Rights Act of 1964*.  None of the allegations that follow seems to speak to retaliation.  In all events, the
    elements are the same for a Title VII retaliation claim.  *Thomas v. City of Beaverton*, 379 F.3d 802, 812
    (9th Cir. 2004).

28  MOTION FOR SUMMARY JUDGMENT
    15-CV-03582 JSC

    16

1    Q. So when you were sent home in October 2009, do you feel that that was
     because of retaliation for anything?

2

3    A.  Well, I think I was being retaliated on because I was thrown into the
     cesspool of not hurt on the job, when, by law, I was hurt on the job for the
     country, and I was hired by the postal service, with the same -- with the

4    amputated leg, and it got aggravated from a job-related injury.  And so I
     was not given my -- my civil right as a 10-point preference veteran that's

5    over civilian employment to maintain my job status and --

6    Q. So you --

7    A. -- and a retaliation. I think that I was targeted. . . .

8    Q. So you feel it was retaliation for the fact that the workers' compensation
     board determined that your injuries were service connected and not on-the-

9    job related; is that -- I'm trying to understand.

10   A. I think it was retaliation from the years that I've been at the postal service
     as a disabled veteran and all the issues that I've gone through gracefully,

11   and they couldn't catch me in any kind of cross-fire.  And they've gotten
     into a lot of trouble as targeting me as a disabled veteran, that this was an

12   opportunity to retaliate and to get me removed from the postal service and
     -- which is also a discrimination against the handicapped and a disabled

13   veteran.

14

15   Ex. A, Campbell Depo. at 133:6-134:13.

16        So what, then, does Campbell mean?  It is hard to say.  The Court noted, though, that the Second

17   Amended Complaint alleged that Campbell "filed a union grievance in October 2009 and that the

18   following month USPS began denying him light duty-work."  Dkt. No. 38, Order, at 15 (March 15, 2016).

19        The FAC simply quotes that language but does not re-allege what is in the Second Amended

20   Complaint.  But even looking back to the earlier complaint, here is what it says: "USPS failed to abide by

21   its own newly established policies, and refused Plaintiff light duty as a reasonable accommodation, which

22   were based upon existing disabilities that led to Plaintiff's constructive termination.  Plaintiff filed a

23   grievance with his union, National Postal Mail Handlers Union (NMPHU) on about 10/2009."  SAC ¶ 8.

24        The earlier complaint is thus saying that he filed a grievance in "10/2009" because the USPS

25   refused to give Campbell light-duty work.  But the actual timing of events was not that way.  The USPS

26   sent Campbell home on October 28, 2009.  Ex. A, Campbell Depo. at 39:3-6.  Campbell filed a grievance

27   about his hours weeks later, on November 22, 2009.  Dkt. No. 24-2, Davis Decl. and Exs.  So the hours

28   MOTION FOR SUMMARY JUDGMENT
     15-CV-03582 JSC

1   grievance gives Campbell's claim no footing.

2

3        **B.**    **Campbell Points To No Causal Evidence, And There Is None In The Record.**

4        There should be no need to keep digging.  It is Campbell's burden to explain and to support his

5   claim.  Still, the government looked for activity that took place before October 28, 2009.  It found a

6   grievance from August 20, 2009.  *See* Ex. I, Letter (Sept. 24, 2009).  Campbell has not put it at issue; so

7   it should not be at issue.  But even if he had, it has no causal link to the USPS's inability to give out light-

8   duty hours.

9        Take first, the timing.   "*[I]n some cases*, causation can be inferred from timing alone where an

10  adverse employment action follows on the heels of protected activity."  *Villarimo v. Aloha Island Air,*

11  *Inc.*, 282 F.3d 1054, 1065 (9th Cir. 2002) (emphasis added).   "The cases that accept mere temporal

12  proximity between an employer's knowledge of protected activity and an adverse employment action as

13  sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity

14  must be very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).

15       Seventy days is not "very close."  True enough, 59 days was close enough in one case.  *Miller v.*

16  *Fairchild Indus.*, 885 F.2d. 498, 505 (9th Cir. 1989).  But this District has approvingly cited a case—

17  *Richmond v. ONEOK*, 120 F.3d. 205, 209 (10th Cir. 1997)—holding that a 3 months is not.  *Jackson v.*

18  *Simon Prop. Grp.,* 795 F.Supp.2d 949, 963 (N.D. Cal. June 17, 2011); *Nelson v. Colvin*, 2014 WL

19  7205043, at *6 (N.D. Cal. Dec. 17, 2014); *Vollmar v. Int'l Bus. Machines Corp.*, 2012 WL 3731512, at *

20  8 (N.D. Cal. Aug. 8, 2012).

21       All the same, causation is what matters.  As the Ninth Circuit put it, "it is causation, and not

22  temporal proximity alone, which is an element of plaintiff's retaliation claim."  *Blanchard v. Lahood*, 461

23  Fed. Appx. 542, 544 (9th Cir.2011).  For example, the Supreme Court held that it did not matter that an

24  employer transferred the plaintiff one month after she sued because the employer was "contemplating the

25  transfer before it learned of the suit."  *Clark Cnty. Sch. Dist.* 532 U.S. at 272.

26       Here, the CBA tied Thompson's hands.  Ex. E, CBA at Art. 13.4C; Ex. B, H.T. (Thompson) 90:22-

27  93:1, 96:5-98:7, 119:1-121:15; Ex. D, Thompson Decl. ¶¶1-4.  When the volume began to decline in June

28  MOTION FOR SUMMARY JUDGMENT

1   2009, it spelled excesses and hours adjustments that had to adhere to the CBA. *Id.* In other words,

2   Thompson's inability to keep giving light duty hours was already in motion.

3       To summarize, the August 20, 2009 grievance makes for no prima facie claim because: (1)

4   Campbell has never put it at issue, (2) Campbell was sent home over two months after he brought it, and

5   (3) the CBA and mail downturn set off an hours shortage before he brought the grievance.

6       But even if there were a prima-facie claim, there is no evidence that Thompson's need to follow

7   the CBA was a pretext for retaliation. *See Part IA*. In other words, there are valid reasons for denying

8   Campbell hours but no evidence that those reasons are a pretext for retaliation. *Yartzoff v. Thomas*, 809

9   F.2d 1371, 1377-1378 (9th Cir. 1987).

10      Rather, the only evidence is a 70-day gap between the grievance and the denial of hours. In a case

11  that the Ninth Circuit let stand despite calling it "weak," in contrast, the court leaned on evidence besides

12  the mere timing of a poor performance review, pointing out that the plaintiff had at least average ratings

13  before the protected activity. *Yartzoff*, 809 F.2d at 1377-1378.

14      There is nothing like that here. The CBA dictated Campbell's hours before and after the August

15  20, 2009 grievance. There is no evidence that Thompson treated Campbell differently than any other light

16  duty worker by sending him home or by any other means. The record shows only that Thompson upheld

17  the USPS's end of the CBA.

18

19          April 10, 2010 Suspension and Bid Denial

20      Campbell has not claimed that his suspension or bid denial led to retaliation. Even if he had put

21  these things at issue, they have no causal link to the USPS's inability to assign light duty hours.

22      Starting with the suspension, not only does Campbell not put it at issue, but also he says that it

23  never happened. Ex. A, Campbell Depo. at 121:12-20. Under the CBA, Thompson asked Campbell to

24  update his medical records and then sent him a letter of warning. Ex. E, CBA at Art. 13.4F; Ex. B, H.T.

25  (Thompson) at 110:8-111:1, 113:9-18.113:9-18; Ex. C, Thompson Decl. ¶ 6. That happened well before

26  Thompson sent home Campbell in October 2009. Indeed, this is what Campbell was grieving on August

27  20, 2009.

28  MOTION FOR SUMMARY JUDGMENT
    15-CV-03582 JSC

1    Finally, the bid denial is no evidence of retaliation.  In awarding the bid to someone else, Kukua

2  was simply following the CBA and the bid instructions that called for a medical certification.  Ex. F,

3  Kukua EEO Affidavit ¶ 17; Ex. B, H.T. (Kukua) at 143:6-146:5, 148:13-25, 150:18-22, 152:10-154:18;

4  Ex. H, Emails re Bid; Ex. E, CBA (MOU re Light Duty Bidding) at 130.  When Kukua checked, Campbell

5  had not submitted one.  *Id.*  Kukua treated all bidders the same, she said.  *Id.*  Gallardo, the shop steward,

6  could think of no one who failed to submit a certification yet won a bid.  Ex. B, H.T. (Gallardo) at 77:9-

7  79:5.  Moreover, nothing suggests that Kukua was aware of Campbell's protests about his hours.  To the

8  contrary, she said that was unaware of Campbell's EEO activity.   Ex. F, Kukua EEO Affidavit ¶¶ 6-8.

9

10

11                                      **CONCLUSION**

12    For the foregoing reasons, the USPS respectfully requests that this Court grant summary judgment

13  on all of Campbell's claims in the FAC.

14

15

16  DATED: April 20, 2017                    Respectfully submitted,

17                                           BRIAN J. STRETCH
                                             United States Attorney
18
                                             */s/ David Pereda*_____
19                                           David A. Pereda
                                             Assistant United States Attorney
20

21

22

23

24

25

26

27

28  MOTION FOR SUMMARY JUDGMENT
    15-CV-03582 JSC