UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELMER E CAMPBELL,<br><br>    Plaintiff,<br><br>v.<br><br>MEGAN J. BRENNAN,<br><br>    Defendant. | Case No. 15-cv-03582-JSC<br><br>**ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 60 |

In this employment discrimination suit against Defendant the United States Postal Service ("USPS"), pro se Plaintiff Elmer Campbell alleges claims for retaliation and discrimination under the Rehabilitation Act and Title VII of the Civil Rights Act ("Title VII"). Defendant's motion for summary judgment is now pending before the Court. (Dkt. No. 60.) Plaintiff failed to timely file an opposition to the motion for summary judgment despite having been granted an extension of time to do so. (Dkt. No. 62.) After carefully considering the evidence and relevant legal authority, the Court GRANTS Defendant's motion for summary judgment for the reasons set forth below.

**BACKGROUND**

**A. Plaintiff's Allegations[1]**

Plaintiff is African-American and a Marine Corps veteran who suffered service-related injuries resulting in the amputation of his right leg, Post Traumatic Stress Disorder ("PTSD"), and a back condition which was aggravated by his left leg condition. (SAC ¶¶ 3, 5.)

---

[1] Plaintiff's operative fifth amended complaint (FAC) fails to separately plead his factual allegations and instead incorporates his second amended complaint (SAC) by reference; the Court thus relies on the facts as alleged in the second amended complaint herein. (Dkt. Nos. 30 & 50.)

In 1982, Plaintiff began working as a USPS Mail Handler. (*Id.* ¶ 5.) Two years later, he sustained an on-the-job injury and received workers' compensation through the Office of Workers' Compensation Program ("OWCP"). (*Id.* ¶ 7.) As a result, Plaintiff began performing "limited duty" work. (*Id.*) After two years of limited duty work, the OWCP determined that Plaintiff had fully recovered from his work-related injury, and ended his limited duty status. (*Id.*) However, Plaintiff's treating physician determined that Plaintiff continued to suffer from his pre-existing service-related injuries, which precluded Plaintiff from returning to full duty at USPS. (*Id.*) Thus, Plaintiff continued to perform in a temporary light duty capacity within his medical restrictions. (*Id.*)

Plaintiff alleges that commencing in 2009 USPS refused to provide him light duty work as a reasonable accommodation for his pre-existing disabilities and that this refusal led to his "constructive termination." (*Id.* ¶¶ 8, 10.) The following year, Plaintiff, a designated senior bidder, placed a bid on a Mail Handler position but USPS awarded the position to a non-disabled employee with less seniority. (*Id.* at ¶ 10.) Plaintiff filed grievances with his Union regarding his constructive termination and the denial of the bid position. (*Id.*) Plaintiff also filed a claim with the Merit Systems Protection Board ("Merit Board") against USPS, alleging discrimination and failure to provide accommodations in violation of the ADA. (*Id.* ¶ 11.) Thereafter, USPS placed Plaintiff on leave without pay status for approximately three years while rejecting Plaintiff's requests to work with reasonable accommodations. (*Id.* ¶ 12.) As a result, USPS forced Plaintiff to involuntarily retire in 2012. (*Id.*)

**B. Summary Judgment Evidence**

In support of its motion for summary judgment, Defendant submitted several sworn declarations, documents, and a transcript of Plaintiff's deposition taken for this case, as well as a transcript of the Equal Employment Opportunity Commission ("EEOC") hearing on the complaint underlying this action. (Dkt. Nos. 60-2 – 60-15.) Plaintiff has not submitted any opposing evidence, although Defendant filed the full transcript of Plaintiff's sworn deposition and EEOC testimony. (Dkt. No. 60-6.) Plaintiff's fifth amended complaint cannot be considered an affidavit

because it is not sworn under penalty of perjury.[2] (Dkt. No. 50.) *See Lew v. Kona Hosp.*, 754 F.2d 1420, 1423 (9th Cir. 1985) (holding that an unverified first amended complaint is insufficient to counter a summary judgment motion supported by affidavits); *cf. Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995) (verified complaint may be used as an opposing affidavit under Rule 56 to extent it alleges facts that fall within plaintiff's personal knowledge).

Plaintiff began working for the Post Office in 1982 as a mail handler at the Richmond, California bulk mail center. (Dkt. No. 60-6, Campbell Depo. at 47:5-6, 50:2-3, 50:19-22.) In 1985, he suffered a job-related injury which aggravated his service connected (amputation) injury and he was given a limited duty assignment. (*Id*. at 47:10-15, 53:8-14.) Limited duty work is for employees who are injured on the job and provides work which accommodates the employee's recovery period. (Dkt. No. 60-7, EEOC testimony of Gary Thompson, 85:25-86:3.)

Plaintiff performed limited duty work for a few years and then the OWCP determined that his work related injury was sufficiently healed so he was given temporary light duty work instead. (Dkt. No. 60-6, Campbell Depo. at 54:15-5.) Light duty work is for employees who have an off-the-job injury, or an on-the-job injury which has been cleared by OWCP, but need accommodations within their work environment. (Dkt. No. 60-7, EEOC testimony of Gary Thompson, at 86:4-20.) Plaintiff performed light duty work on a full-time basis from 1989 to 2009. (Dkt. No. 60-6, Campbell Depo. at 57:1-3, 59:10-11.) During this time, he did a variety of jobs: forklift, tow tractor, tagging the mail, "anything that [he] could find." (*Id*. at 57:8-14.)

Beginning in November 2008, Plaintiff worked on the LIM belt doing "rewrap" for loose mail without addresses. (*Id*. at 69:25-70:13, 83:5-7.) His medical limitation at that time was no prolonged standing and no lifting over 25 pounds. (*Id*. at 83:8-14; Dkt. No. 60-15.) The light duty assignment corresponding to this medical limitation stated that its duration was November 22, 2008 to December 30, 2008 and that "[p]rior to the end of the approved period of light duty, if you still need light duty, you must submit a new written request with current medical restrictions in support of that re-newed request or you will be returned to full duty the day after the currently

---

[2] The same is true for prior iterations of Plaintiff's complaint. (Dkt. Nos. 1, 18, 30, 40.)

3

approved light duty expires." (Dkt. No. 60-15.)

In mid-2009, Plaintiff was asked to provide medical documentation supporting his need for light duty status. (Dkt. No. 60-6, Campbell Depo. at 91:12-92:9.) Plaintiff resubmitted the same family medical leave documents that he submitted at the beginning of each year. (*Id*.) Management rejected these documents and instead sought documentation from a physician attesting to why Plaintiff could not perform the essential functions of his position. (Dkt. No. 607, Thompson EEOC testimony at 115:10-20.) In particular, in August 2009, Plaintiff was issued a letter of warning regarding his failure to submit the medical documentation. (Dkt. No. 60-8, Thompson Decl. at ¶ 6.) Plaintiff filed a grievance because he had submitted the same type of documents verifying his medical condition in 2009 as he did every year. (Dkt. No. 60-6, Campbell Depo. at 89:1-15, 119:2-12; Dkt. No. 60-14.) The grievance was rejected because "all employees in light or limited duty assignments are required to periodically update their duty limitation." (Dkt. No. 60-14 at 3.) The rejection letter states: "[w]hile it has been established that the grievant is missing part of his leg from his military service, it is not established that his condition will permanently prevent him from performing other than in the light duty assignment he encumbers" and he has not requested "a permanent light duty assignment." (Dkt. No. 60-14 at 3.)

A month later, Gary Thompson, Manager of Distribution Operations at Plaintiff's mail center directed that Plaintiff be sent home because there was not enough work for him. (Dkt. No. 60-8, Thompson Decl. at ¶ 4.) Mr. Thompson made this decision because there had been a "drastic reduction in volume and revenues" such that Plaintiff's work—which was part of a bid job for another mail handler—had to be returned to a full-time regular employee to meet the 8-hours of work guaranteed to full-time employees under the collective bargaining agreement. (*Id*.) Before the EEOC, Mr. Thompson testified that the volume fell by 38 percent during this time. (Dkt. No. 60-7 at 91:17.) In addition, Mr. Thompson determined that Plaintiff was not able to perform the essential functions of the job. (Dkt. No. 60-7, Thompson EEOC testimony at 96:21-98:7; 120:16-25.) At least one other employee, a Filipino man with multiple sclerosis who also had light duty work was sent home at the same time as Plaintiff. (*Id*. at 124:1-25.)

4

A few months later, in early 2010, Plaintiff bid on a container loader position. (*Id*. at 103:12-21.) Plaintiff won the bid for the position, but they gave it to another employee because Plaintiff had not provided medical documentation saying he could perform the essential functions of the position. (Dkt. No. 60-6, Campbell Depo. at 105:18-106:20.) According to Plaintiff, they gave the bid to someone else before he had the opportunity to provide this medical documentation. (*Id*. at 106:21-22.) However, Plaintiff's supervisor, Mr. Thompson, testified that the post office requires medical documentation to be submitted at the time of bidding per the collective bargaining agreement. (Dkt. No. 60-8, Thompson Decl. at ¶ 5; Dkt. No. 60-8 at 5 (memorandum of understanding re: light duty bidding).) Arleen Kukua, an operations support specialist, who is responsible for assigning bids testified before the EEOC that employees must have updated medical restrictions on file at the time a bid is made. (Dkt. No. 60-7 at 152:10-20.)

In April 2010, Plaintiff was issued a seven day suspension for his continued failure to provide medical documentation as instructed in his August 2009 Letter of Warning. (Dkt. No. 60-8, Thompson Decl. at ¶ 6.)

In January 2013, the post office settled Plaintiff's union grievance and paid him his back pay and all corresponding benefits from November 12, 2009 through March 2, 2012. (Dkt. No. 24-2 at ¶ 4.)

**C. Procedural History**

Plaintiff filed two EEOC complaints in 2010 alleging discrimination, retaliation, and failure to accommodate, and received a right to sue on April 30, 2015. (SAC ¶¶ 10, 12; Dkt. No. 1 at 5.)

In August 2015, Plaintiff, proceeding pro se, brought this action against Defendant Megan Brennan in her official capacity as the Postmaster General. (Dkt. No. 1.) The Complaint alleged that USPS engaged in disability discrimination and failed to accommodate Plaintiff's disability. (*Id.*) Defendant filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 13.) Plaintiff conceded that his Complaint failed to state a claim and consented to dismissal without prejudice. (Dkt. No. 15.) The Court granted Defendant's unopposed motion and allowed Plaintiff to file an amended complaint. (Dkt. No. 17.)

Plaintiff subsequently filed his First Amended Complaint ("FAC") alleging (1) employment discrimination based on disability and in violation of the Rehabilitation Act; (2) retaliation in violation of the Rehabilitation Act; (3) race discrimination in violation of Title VII; and (4) retaliation in violation of Title VII. (Dkt. No. 18.)

Defendant again moved to dismiss, and again, rather than opposing the motion, Plaintiff conceded that dismissal was appropriate, but sought leave to file a second amended complaint. (Dkt. Nos. 24 & 26.) The Court granted Defendant's unopposed motion to dismiss the FAC and ruled that Plaintiff could file a second amended complaint as a matter of right. (Dkt. No. 29.) Plaintiff thereafter filed his second amended complaint bringing four causes of action: (1) disability discrimination under the Americans with Disabilities Act ("ADA"); (2) retaliation in violation of Title VII; (3) retaliation in violation of the Rehabilitation Act; and (4) violation of the Back Pay Act. (Dkt. No. 30.) Defendant moved to dismiss the Second Amended Complaint. (Dkt. No. 31) The Court granted Defendant's motion in part and denied it in part. (Dkt. No. 38.) Plaintiff's Back Pay claim was dismissed for lack of subject matter jurisdiction, and his claims under Title VII, the ADA, and the Rehabilitation Act were dismissed for failure to state a claim. The motion was denied as to Plaintiff's retaliation claims. (*Id*.)

Plaintiff then filed a third amended complaint, but he neglected to re-plead his retaliation claims. (Dkt. No. 40.) At a subsequent Case Management Conference on May 12, 2016, the parties agreed that Plaintiff could file a fourth amended complaint to include the retaliation claims. (Dkt. No. 43.) The Court issued a Pretrial Order which set the deadline for hearing dispositive motions for May 25, 2017 and set a trial date of July 24, 2017. (Dkt. No. 44.)

Two weeks later, Plaintiff filed a fourth amended complaint which included the retaliation claims, but omitted his discrimination claims under the Rehabilitation Act and Title VII. (Dkt. No. 46.) The parties then stipulated that Plaintiff could file a fifth amended complaint to cure these pleading defects. (Dkt. No. 47.) Plaintiff thereafter filed the now-operative fifth amended complaint which pleads claims for: (1) disability discrimination under the Rehabilitation Act, (2) retaliation under the Rehabilitation Act; and (3) retaliation under Title VII. (Dkt. No. 50.)

On April 20, 2017, Defendant filed a motion for summary judgment in accordance with the

1 Pretrial Order filed nearly a year earlier. (Dkt. No. 60.) Plaintiff failed to file a timely opposition and the Court sua sponte granted him an extension of time to do so, ordering Plaintiff to file his response to the motion for summary judgment by May 23, 2017. (Dkt. No. 62.) Plaintiff failed to do so, and instead, on May 24, 2017 Plaintiff filed an "ex parte motion" which sought a 60 day extension of time to respond to the motion for summary judgment because "I had not received proof of service for motion for summary judgement [sic] until May 23, 2017." (Dkt. No. 63.) The following day, May 25, Plaintiff appeared in Court at 9:00 a.m.—the time originally set for Defendant's motion for summary judgment, but which had been vacated due to Plaintiff's failure to file an opposition (Dkt. No. 62)—and advised the Courtroom Deputy that he had not checked his PO Box until May 23, 2017 at which point he discovered the motion for summary judgment. Defendant filed a response to Plaintiff's request for an extension maintaining that it had mailed Plaintiff a copy of the summary judgment motion on April 20, 2017 and emphasizing that the date for summary judgment had been set a year ago. (Dkt. No. 64.)

The Court declines to grant Plaintiff a further extension of time to respond to the motion for summary judgment. Although the filing and hearing dates for the motion for summary judgment were set more than a year ago, Plaintiff apparently failed to check his PO Box for nearly a month. Plaintiff has not shown good cause—or even any cause—for his failure to do so. The Court and government counsel have been exceedingly patient with Plaintiff allowing him multiple opportunities to amend his pleadings to cure his failure to plead all of his claims in each iteration of his complaint. The Court has also referred Plaintiff to the free Legal Help Center for assistance with his case on multiple occasions. (Dkt. Nos. 5, 29, 38.) Further, as of the date of this Order Plaintiff has still not filed a summary judgment opposition. It is time for resolution of the summary judgment motion.

**LEGAL STANDARD**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact

is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*.

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. *Id*. If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Id*. At summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014).

Where, as here, a motion for summary judgment is unopposed, the court may not grant the motion solely because the opposing party has failed to file an opposition. *See Cristobal v. Siegel*, 26 F.3d 1488, 1494-95 & n.4 (9th Cir. 1994) (unopposed motion may be granted only after court determines that there are no material issues of fact). The Court may, however, grant an unopposed motion for summary judgment if the movant's papers are themselves sufficient to support the motion and do not on their face reveal a genuine issue of material fact. *See Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1029 (9th Cir. 2001).

**DISCUSSION**

Plaintiff makes claims for discrimination and retaliation under the Rehabilitation Act and Title VII. These claims appear to arise from three separate incidents: (1) the decision in October 2009 to send Plaintiff home because no work was available, (2) the denial of the February 2010 bid position based on Plaintiff's lack of medical documentation on file, and (3) Plaintiff's April 2010 suspension for failure to have medical documentation on file as required. The gist of Plaintiff's claims seems to be that the October 2009 and February 2010 actions constitute

1  discrimination on the basis of his disability and that the suspension was done in retaliation for his
2  complaints of disability discrimination.

### A. Plaintiff's Disability Discrimination Claim

Federal employees may make claims for disability discrimination through Section 501 of the Rehabilitation Act, 29 U.S.C. § 791, which incorporates the prohibition against such discrimination of the ADA, 42 U.S.C. § 12111, among others. 29 U.S.C. § 791; *see Boyd v. U.S. Postal Service*, 752 F.2d 410, 413–14 (1985) (noting that the Rehabilitation Act incorporates the types of discrimination claims available under the ADA). When reviewing the sufficiency of disability discrimination claims under the Rehabilitation Act, courts incorporate the ADA's standards. *See Fleming v. Yuma Regional Med. Ctr.*, 587 F.3d 938, 939 (9th Cir. 2009). "Disability discrimination" encompasses disparate treatment—denying an employee equal jobs or benefits because of the employee's disability, 42 U.S.C. § 12112(a), (b)(4)—and failure to accommodate a disability, 42 U.S.C. § 12112(a), (b)(5). Plaintiff appears to claim both disparate treatment based on his disability and a failure to accommodate.

#### 1) Plaintiff has not Made a Prima Facie Case for Disparate Treatment

To state a prima facie case under the Rehabilitation Act based on disparate treatment, "a plaintiff must demonstrate that (1) []he is a person with a disability, (2) who is otherwise qualified for employment, and (3) suffered discrimination because of h[is] disability." *Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1005 (9th Cir. 2007). Once Plaintiff demonstrates a prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason" for the employment decision. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 53–54 (2003). If the employer offers a nondiscriminatory reason, the burden returns to the plaintiff to show that the articulated reason is a "pretext" for discrimination. *See Karr v. Napolitano*, No. C 11-02207 LB, 2012 WL 4462919, at *6 (N.D. Cal. Sept. 25, 2012) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)).

Plaintiff has not satisfied the threshold requirement of establishing a prima facie case of disparate treatment disability discrimination. Plaintiff's disparate treatment claim is predicated on his allegation that Defendant discriminated against him based on his disability "by refusing and

failing to transfer or reassign Plaintiff to a job within his medical restrictions." (FAC at 5-6.) Plaintiff, however, has failed to offer any evidence that he was treated any differently than any other employee *because of* his disability. In contrast, Defendant has offered evidence that the decision to send Plaintiff home in October 2009 was based on a 38 percent decline in work and that under the collective bargaining agreement full-time employees had priority over temporary light duty employees for assignments. Plaintiff's supervisor, Mr. Thompson, attests that he directed Plaintiff to be sent home because "[t]he work previously performed by Complainant was part of the bid job of another mail handler, and in this climate of drastic reduction in volume and revenues, his work must be returned to the full-time regular employee in order to meet their 8-hour guarantee." (Dkt. No. 60-8 at ¶ 4.) As a light duty employee, Plaintiff was not guaranteed any minimum number of hours under the collective bargaining agreement. (*Id.* at ¶ 2.) Indeed, the collective bargaining agreement states at Article 13.3.B that "[l]ight duty assignments may be established from part-time hours, to consist of 8 hours or less in a service day and 40 hours or less in a service week. The establishment of such assignment does not guarantee any hours to a part-time flexible employee." (Dkt. No. 60-10 at 11.) Further, "[t]he reassignment of a full-time regular or part-time flexible employee to a temporary or permanent light duty or other assignment shall not be made to the detriment of any full-time regular on a scheduled assignment or give a reassigned part-time flexible preference over other part-time flexible employees." (*Id.* at Article 13.4.C.) Plaintiff does not dispute that his medical restriction at that time limited him to light duty work. Under the terms of the collective bargaining agreement then, full-time employees would have had priority with respect to assignments. That Defendant's decision to send Plaintiff home was not based on his disability is reinforced by the fact that at least one other light duty employee was similarly told that there was not work available for him based on the reduction in volume and the terms of the collective bargaining agreement. (Dkt. No. 60-7, Thompson EEOC testimony at 124:1-25.)

With respect to Plaintiff's bid on the container loader position in February 2010, Plaintiff has failed to show that he was qualified to perform the essential functions of the container loader position. (Dkt. No. 60-6, Campbell Depo. at 105:18-106:20.) According to Plaintiff's supervisor,

Mr. Thompson, the post office requires medical documentation to be submitted at the time of bidding per the collective bargaining agreement. (Dkt. No. 60-8, Thompson Decl. at ¶ 5; Dkt. No. 60-7, Kukua EEOC testimony at 152:10-20.) Indeed, the collective bargaining agreement provides that:

> Management may, at the time of submission of the bid or at any time thereafter, request that the employee provide medical certification indicating that the employee will be able to perform the duties of the bid-for position within six (6) months of the bid. If the employee fails to provide such certification, the bid shall be disallowed, and, if the assignment was awarded, it shall be reposted for bidding.

(Dkt. No. 60-8 at 5.) Further, Arleen Kukua, an operations support specialist who is responsible for assigning bids, testified before the EEOC that employees must have updated medical restrictions on file at the time a bid is made. (Dkt. No. 60-7 at 152:10-20.) Plaintiff has not countered Defendant's showing with any evidence that this requirement was only enforced as to him; that is, evidence that he was singled out and required to provide this medical documentation where others were not.

"A plaintiff's belief that a defendant acted from an unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive. To be cognizable on summary judgment, evidence must be competent." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001) Plaintiff has failed to set forth competent evidence supporting a prima facie claim that he was discriminated against because of his disability. Summary judgment is granted in Defendant's favor on this claim.

**2) No Evidence of Failure to Accommodate**

To state a prima facie case for failure to accommodate a disability, a plaintiff must show that (1) he is disabled; (2) he is a qualified individual (i.e. that he can, with or without reasonable accommodations, perform the essential functions of his job); and (3) that a reasonable accommodation is possible. *Zukle v. Regents of the Univ. of Cal.*, 166 F.3d 1041, 1045 (9th Cir. 1999). A "reasonable accommodation" is defined as "modifications or adjustments to the work environment, or to the manner of circumstances under which the position held or desired is

11

customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). The employee bears "the burden of showing the existence of a reasonable accommodation that would have enabled him to perform the essential functions of an available job." *Dark v. Curry County*, 451 F.3d 1078, 1088 (9th Cir. 2006); *see also Memmber v. Marin County Courts*, 169 F.3d 630, 633 (9th Cir. 1999) ("[B]ecause [the plaintiff] bears the burden of establishing an ADA violation, [the plaintiff] must establish the existence of specific reasonable accommodations that [the employer] failed to provide.").

Plaintiff alleges that Defendant failed "to engage in an interactive process to determine a reasonable [] accommodations" and provide such reasonable accommodations. (FAC at 5-6.) The Court previously held that these allegations—when pled in the context of his second amended complaint—were insufficient to state a claim for failure to accommodate. (Dkt. No. 38.) This remains true—Plaintiff has not alleged what the reasonable accommodation would have been. Although Plaintiff represented at the hearing on the motion to dismiss his second amended complaint that he sought to continue in a light duty position similar to the one he had held for over 20 years and that there were such positions available for which he was qualified and which would accommodate light duty work, he failed to plead this in his fifth amended complaint and, more critically, failed to offer evidence in support of this claim. (Dkt. No. 38 at 12.)

Moreover, Defendant's evidence is to the contrary. As discussed above, Plaintiff's supervisor, Gary Thompson testified that Plaintiff was sent home in October 2009 because there was not enough work for him. (Dkt. No. 60-7 at 91:1-93:23.) Mr. Thompson made this decision because there had been a "drastic reduction in volume and revenues" such that Plaintiff's work—which was part of a bid job for another mail handler—had to be returned to a full-time regular employee to meet the 8-hours of work guaranteed to full-time employees under the collective bargaining agreement. (Dkt. No. 60-8, Thompson Decl. at ¶ 4.) Defendant has thus offered evidence—which Plaintiff has not rebutted—that under the collective bargaining agreement it was required to give preference to full-time regular employees over temporary light duty employees such as Plaintiff. To the extent that Plaintiff's proposed accommodation was that he be allowed to continue to do the light duty position that he had been doing, such an accommodation was not

12

reasonable as it would require violation of the collective bargaining agreement. *See Willis v. Pac. Mar. Ass'n*, 236 F.3d 1160, 1165 (9th Cir.), opinion amended on denial of reh'g, 244 F.3d 675 (9th Cir. 2001), as amended (Mar. 27, 2001) ("[A]n accommodation that would compel an employer to violate a CBA is unreasonable.").

The Court thus concludes that Plaintiff has failed to offer evidence sufficient to support a finding in his favor on his failure to accommodate claim. Summary judgment is granted in Defendant's favor on this claim.

**B. Retaliation**

Plaintiff pleads a retaliation claim under both Title VII and the Rehabilitation Act. To establish a prima facie case of retaliation under either statute, Plaintiff must prove that (1) he engaged in a protected activity, (2) he suffered an adverse employment decision, and (3) there was a causal link between the protected activity and the adverse employment decision. *See T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 473 (9th Cir. 2015) (adopting Title VII's framework for ADA retaliation claims). The "standard for the 'causal link' is but-for causation." *Id*. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision. Then, in order to prevail, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973).

No reasonable jury could find that Plaintiff has made out a prima facie case of retaliation based either on his race or disability. Plaintiff alleges that he was constructively terminated, refused a transfer or reassignment to a job with his medical restrictions, and subject "to other adverse acts in retaliation for his protected activities." (FAC at 6-7.) As for his protected activity, he alleges that he filed a union grievance in October 2009 and that the following month USPS began denying him light duty-work, and that after he exhausted his union and Merit Systems administrative remedies in 2010, USPS placed him on leave without pay. (*Id*. at 4-5.) Even assuming these allegations are sufficient to show that Plaintiff engaged in a protected activity, he has not plausibly alleged a causal link between that activity and suffering an adverse action. The

13

record reflects that Plaintiff filed his grievance regarding being denied work *after* he was sent home October 28, 2009. No reasonable jury could conclude that a grievance filed after Plaintiff was sent home for lack of work was the but-for cause for Plaintiff having been sent home.[3] The but-for causation standard "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the [defendant]." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, ––– U.S. ––––, 133 S.Ct. 2517, 2533 (2013).

Likewise, the record reflects that Plaintiff was placed on leave without pay because of his failure to provide required medical documentation from August 2009 through April 2010. As with the October 2009 decision to send Plaintiff home, the initial request that Plaintiff provide this documentation *predates* the filing of any grievance. Further, the collective bargaining agreement at Article 13.4.F requires the installation head—here, Mr. Thompson—to:

> review each light duty reassignment at least one each year, or at any time the installation head has reason to believe the incumbent is able to perform satisfactorily in other than the light duty assignment the employee occupies. This review is to determine the need for continuation of the employee in the light duty assignment. Such employee may be requested to submit to a medical review by a physician designated by the installation head if the installation head believes such examination to be necessary.

(Dkt. No. 60-10 at 12.) Plaintiff does not dispute that the collective bargaining agreement includes this provision, but instead, maintains that he was not required to submit the documentation in the past. But Plaintiff has failed to make any showing that the reason they required him to submit different documentation in 2009 had anything to do with his disability. Without proof of such a causal connection, Plaintiff's claim fails. *Nassar*, 133 S.Ct. at 2534 (holding that a plaintiff "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the

---

[3] Although the record is unclear on this point, Plaintiff did file a grievance at some point regarding the August 2009 Letter of Warning requiring him to submit additional medical documentation. To the extent that this is the October 2009 grievance to which he refers, Plaintiff has failed to show that a grievance regarding the requirement that he submit additional medical documentation could have been the but-for cause for him having been sent home. In addition, Defendant has offered evidence that the decision to send him home was based on the terms of the collective bargaining agreement. *See Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994), as amended on denial of reh'g (July 14, 1994) ("Once the defendant fulfills this burden of production by offering a legitimate, nondiscriminatory reason for its employment decision, the *McDonnell Douglas* presumption of unlawful discrimination 'simply drops out of the picture.'"). Nor is there any evidence that this legitimate nondiscriminatory reason was pretext for unlawful discrimination.

14

employer");

Finally, although Plaintiff pled a Title VII claim for retaliation based on race, nowhere in his complaint does he allege either (1) that he engaged in protected activity related to his race, or (2) that he was targeted or singled out based on his race. Plaintiff likewise disavowed any discrimination based on race during his deposition testifying that "I don't think it got that crazy, but no" in response to a question about whether anyone had made derogatory remarks to him based on his race. (Dkt. No. 60-6, Campbell Depo. at 126:5:22-126:9.) Further, although Plaintiff testified that he was aware that one of the supervisors David Bernard was "known to be a racist," he did not testify that Mr. Bernard said racist things to him. (*Id*. at 130:1-2.) Instead, he testified that he thought Mr. Bernard was one of the people who looked over his paperwork because Plaintiff's union representative told him that Mr. Bernard's name was on a lot of the "papers that had to be signed through the discussions of my grievances." (*Id*. at 131:14-133:3.) This is corroborated by the testimony of Ms. Kukua, who was in charge of the bid assignments in February 2010, that Mr. Bernard verified that Plaintiff was on light duty and that he did not have a medical clearance on file. (Dkt. No. 60-7 at 144:7-146:5.) But Plaintiff does not dispute that he was on light duty status and that he did not have medical clearance on file. Instead, Plaintiff appears to contend that historically neither of these facts had been a basis for disqualifying him from work. But there is nothing to suggest that the rule changed based on any racially discriminatory animus. To the contrary, the bid sheet itself specified:

> PLEASE NOTE:
> If you are currently in a light or limited duty status and would like to preference an assignment on this bid posting, as the time of your bid submission management request that you provide and/or have on file, medical certification indicating that you will be able to fully perform the duties of the bid position within six months. Failure to do so will result in the disallowance of your bid submission.[4]

(Dkt No. 60-12.) The collective bargaining agreement itself states that management may require

---

[4] At his deposition, Plaintiff disputed that this language was on the bid form that he signed. (Dkt. No. 60-6 at 13-21.) But in his EEOC testimony—also under oath—he testified that "When I bid on it, they said, 'within six month, would you be able to do that bid?' In my case, it was like I have to have something on file at that time before they will give me the bid." (Dkt. No. 60-7 at 33:7-10.)

15

such documentation. (Dkt. No. 60-8 at 5.) Accordingly, no reasonable jury could conclude that Plaintiff was denied the bid assignment in retaliation for any protected activity related to his race. *See Carmen v. San Francisco Unified Sch. Dist*., 237 F.3d 1026, 1028 (9th Cir. 2001) (affirming district court's grant of summary judgment where there was "no evidence in the deposition or anywhere else in the summary judgment papers of any basis in personal knowledge for the plaintiff's subjective belief about the defendant's motive.")

Accordingly, Defendant's motion for summary judgment on Plaintiff's claims for retaliation in violation of the Rehabilitation Act and Title VII is granted.

## CONCLUSION

For the reasons stated above, the Court GRANTS Defendant's Motion for Summary Judgment. (Dkt. No. 60.) The Court will enter judgment by separate order.

The Clerk shall close the action.

**IT IS SO ORDERED.**

Dated: June 13, 2017

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

16